No. 15-50247

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

—————————————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STANLEY DAN RECZKO III,

Defendant-Appellant.

—————————————————————————

**APPELLANT'S REPLY BRIEF**

**PUBLICLY FILED REDACTED VERSION**

Appeal from the United State District Court
for the Central District of California
The Honorable George H. King
United States District Judge
No. 07 Cr. 1221 GHK

COLEMAN & BALOGH LLP
ETHAN A. BALOGH
NARAI SUGINO
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Email: eab@colemanbalogh.com

Attorneys for Appellant
STANLEY DAN RECZKO III

# **TABLE OF CONTENTS**

ARGUMENT IN REPLY ......................................................................1

A.    The district court constructively denied Reczko his Sixth Amendment right to counsel, and abused its discretion, when it denied his numerous requests for substitute counsel and permitted him to be represented by conflicted counsel for several years...................................................................1

    1.    The record establishes a toxic attorney-client relationship marred by counsel's animosity, reciprocal distrust, and a complete breakdown in communication. ....................................................................1

    2.    This Court's precedent establishes that the district court abused its discretion when it denied Reczko's (and his attorneys') numerous motions for substitute counsel, constructively denying him his right to counsel under the Sixth Amendment. ..................................................12

B.    The district court should have reappointed counsel after Reczko requested reappointment during his *pro se* tenure, and its failure to do so also violated Reczko's Sixth Amendment right to counsel. ...............................................15

C.    The district court's colloquy with Reczko regarding the waiver of his jury trial right was insufficient under the circumstances to establish that the waiver was knowing and voluntary. .............................................................21

D.    The district court erred when it found that Reczko's prior state conviction qualified as a "prior sex conviction" involving a minor under 18 U.S.C. § 3559(e). ...........................................................................................25

E.    The district court committed plain error under *Burrage v. United States.*.....28

F.    The district court abused its discretion when it denied Reczko's Rule 15 motions to preserve the exculpatory testimony of two overseas witnesses, solely because Reczko could not first confirm their willingness to cooperate. ...................................................................................................30

G.    Reczko's mandatory life sentence under 18 U.S.C. § 3559(e) violates the Eighth Amendment. ........................................................................35

CONCLUSION ......................................................................................39

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970) ................................... 8, 11, 12, 14

*Burrage v. United States*, 571 U.S. 204 (2014) ................................................ 28, 29

*Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005) ................................. 9, 12, 14

*Gonzalez v. Duenas-Alvarez*, 549 U.S. 183 (2007) ...............................................27

*Larson v. Palmateer*, 515 F.3d 1057 (9th Cir. 2008) ...........................................3, 4

*McCormick v. Adams*, 621 F.3d 970 (9th Cir. 2010)..............................................17

*Norris v. Morgan,* 622 F.3d 1276 (9th Cir. 2010) ............................... 35, 36, 37, 38

*People v. Voymas*, 39 A.D.3d 1182 (N.Y. 2007)....................................................27

*Plumlee v. Masto*, 512 F.3d 1204 (9th Cir. 2008) ..................................................6

*Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000)................................................ 3, 4, 5

*Shepard v. United States*, 544 U.S. 13 (2005) ........................................................28

*United States v. Brown*, 879 F.3d 1043 (9th Cir. 2018) .........................................25

*United States v. Lillard*, ___F.3d___, 2019 WL 4047521 (9th Cir. Aug. 28, 2019) ..................................................................................................................25

*United States v. Adelzo-Gonzalez*, 268 F.3d 772 (9th Cir. 2001)............... 12, 13, 14

*United States v. Carter*, 560 F.3d 1107 (9th Cir. 2009) ........................................3, 4

*United States v. Castillo-Marin,* 684 F.3d 914 (9th Cir. 2012) .............................18

*United States v. Christensen*, 18 F.3d 822 (9th Cir. 1994).................. 21, 22, 23, 24

*United States v. Cochran*, 770 F.2d 850 (9th Cir. 1985)........................... 22, 23, 24

*United States v. Gamboa–Cardenas*, 508 F.3d 491 (9th Cir. 2007)......................26

*United States v. Gnirke*, 775 F.3d 1155 (9th Cir. 2015).........................................29

*United States v. Hanson*, ___F.3d___, 2019 WL 4051595 (9th Cir. Aug. 28, 2019) ....................................................................................................25

*United States v. Miller*, 767 F.3d 585 (6th Cir. 2014)............................................29

*United States v. Nichols,* 534 F.2d 202 (9th Cir. 1976)..........................................31

*United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).........................................8

*United States v. Paton,* 535 F.3d 829, 837 (8th Cir. 2008) ............................ 36, 38

*United States v. Reyes-Bosque*, 596 F.3d 1017 (9th Cir. 2010)...............................9

*United States v. Rivera-Corona*, 618 F.3d 976 (9th Cir. 2010)...............................2

*United States v. Shorty*, 741 F.3d 961 (9th Cir. 2013)....................... 21, 22, 23, 24

*United States v. Smith*, 282 F.3d 758 (9th Cir. 2002)...........................................6, 7

*United States v. Stephenson*, 244 F. App'x 166 (9th Cir. 2007) .......................6, 7

*United States v. Thompson*, 587 F.3d 1165 (9th Cir. 2009) ........................... 18, 20

*United States v. Trenary,* 473 F.2d 680 (9th Cir. 1973) .................................. 31, 32

*United States v. Velasquez*, 855 F.3d 1021 (9th Cir 2017)............................ *passim*

*United States v. Walker*, 915 F.2d 480 (9th Cir. 1990) .......................................8, 9

*United States v. Warren*, 984 F.2d 325 (9th Cir. 1993).........................................28

*United States v. Williams*, 594 F.2d 1258 (9th Cir. 1979)......................... 11, 12, 14

*United States v. Zhou*, 838 F.3d 1007 (9th Cir. 2016)...........................................25

*United States v. Zuno Arce,* 44 F.3d 1420 (9th Cir. 1995) ....................................31

**Statutes**

18 U.S.C. § 2242 .................................................................. 26, 27, 28

18 U.S.C. § 2251 .................................................................. 28, 29, 38

18 U.S.C. § 249 .................................................................................29

18 U.S.C. § 3559 ...................................................................... *passim*

18 U.S.C. § 2241 ...................................................................... 26, 27

N.Y. Pen. L. § 10.00 ........................................................................27

N.Y. Pen. L. § 130.35(1) ........................................................... 26, 27

## ARGUMENT IN REPLY

**A.    The district court constructively denied Reczko his Sixth Amendment right to counsel, and abused its discretion, when it denied his numerous requests for substitute counsel and permitted him to be represented by conflicted counsel for several years.**

In opposition to Appellant Stanley Reczko III's claims that the district court abused its discretion and constructively denied him his Sixth Amendment right to counsel by denying his numerous motions for substitute counsel, and permitting two deeply-conflicted attorneys to represent him for over six years, *see* AOB 45-57, the Government's Answering Brief largely ignores the record and the substance of his challenges.  The Court should sustain Appellant's claims.

**1.    The record establishes a toxic attorney-client relationship marred by counsel's animosity, reciprocal distrust, and a complete breakdown in communication.**

The depth, nature, and length of counsel's irreconcilable conflict in this case was extraordinary, and the Government never grapples with it.  It instead (1) ignores numerous instances in which Reczko's attorneys communicated and exhibited the existence of an egregious and irreconcilable conflict, and (2) characterizes Reczko negatively in order to assign the entire blame to him.  But scrutiny of this robust record demonstrates the merit of Reczko's challenge.

The Government first avoids the issue by recasting it as whether Reczko, an indigent defendant, was entitled to specific counsel.  GAB 55.  He wasn't, and never claimed he was, and raises no such challenge on appeal.  As a result, the

1

Government's reliance on *United States v. Rivera-Corona*, 618 F.3d 976 (9th Cir. 2010), GAB 55-56, is misplaced, as that case concerned a defendant who sought to replace his retained counsel with appointed counsel.

As for Reczko's constructive denial of counsel claim, the Government asserts that ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ GAB 56-67.[1] But that's revisionist history. The Government's sole focus ███████████████████████████████████ ████████████████████████████████████—distorts the facts and proceedings below.

With respect to the district court's multiple denials of Reczko's requests for substitute counsel, the Government first argues that the conflict arose solely from a disagreement about litigation strategy. GAB 56, 59-61. The record proves otherwise. ████████████████████████████████████████ ████████████████████████████████████████████

---

[1] Rather than respond to Reczko's argument on appeal, the Government responds by repeating (at times verbatim) the district court's July 3, 2012 order denying one of Reczko's many requests for substitute counsel. *Compare* GAB 59-67, *with* ER 601-05. But, of course, that is not a response to Reczko's marshaling of evidence for the years before and following that order, in support of his claim on appeal.

██████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

████████████████. *See* AOB 6-22.

Because the Government ignores these facts in favor of a cramped view of the proceedings, the cases it cites are inapposite. *See* GAB 56-57 (citing *United States v. Carter*, 560 F.3d 1107, 1113 (9th Cir. 2009); *Larson v. Palmateer*, 515 F.3d 1057, 1066-67 (9th Cir. 2008); *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000) (*en banc*)).

*Carter* is nothing like this case. There, the defendant's attorney informed the court at a brief sidebar conference that he and the defendant disagreed on trial strategy; this occurred following the trial's commencement. 560 F.3d at 1111. On those grounds only, the attorney moved to withdraw, and the court denied the request. *Id.* This Court found the district court didn't abuse its discretion in denying the motion, finding that the conflict was limited to a disagreement on trial tactics. *Id.* at 1113. *Carter* presents nothing like ████████████████ ███████████████████████████████.

3

*Larson* offers the same. In that habeas case, the defendant, who was on trial for murder in state court, had made three motions for substitute counsel, each of which were granted, resulting in a new set of attorneys each time. 515 F.3d at 1066. Then, on the eve of trial, the defendant again moved for substitute counsel. *Id.* The trial court denied the motion, and this Court found no error because the defendant had not argued that the third attorney "had either an actual or apparent conflict of interest[,]" and that he instead "complained solely about his counsel's strategic decisions and lack of communication with him[.]" *Id.* Like *Carter*, Reczko's case cannot be compared to *Larson*. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████ h. ER 893-94, 347, 371-75, 393-94, 602; CR 1206.

*Schell* doesn't advance the Government's position either. There, the appellant moved the state trial court for substitute counsel below, and the court refused to process the motion. 218 F.3d at 1025. The appellant had alleged that his attorney was hostile, and that she refused to communicate with him, investigate his case, or defend him unless he pleaded guilty. *Id.* at 1026-27. This Court noted that, because there was no evidentiary hearing on the motion, there was no way to know how deep the alleged conflict ran, *viz.*, whether it was such that it violated the appellant's Sixth Amendment right to counsel. *Id.* at 1027. Accordingly, this

Court reversed the denial of the appellant's habeas petition and remanded with instructions the district court hold a hearing to determine the nature and extent of the conflict. *Id. Schell* thus has no application here, where ███████████████ ████████████████████ and clearly demonstrated by the record.

Next, the Government argues that the district court properly denied Reczko's motions because ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████████████████

██████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ As a result, *Plumlee v. Masto*, 512 F.3d 1204 (9th Cir. 2008) (*en banc*); *United States v. Smith*, 282 F.3d 758 (9th Cir. 2002); and *United States v. Stephenson*, 244 F. App'x 166 (9th Cir. 2007) (unpublished), cannot help the Government. *Cf.* GAB 57-58.

*Plumlee* stands for the anodyne proposition that "the Sixth Amendment is [not] violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust." 512 F.3d at 1211. That's not this case, and even the Government essentially concedes █████████████████████ *See* GAB 57-67.

In *Smith*, the defendant—post-trial and pre-sentencing—moved for substitute counsel, and the district court denied the motion. 282 F.3d at 764. This Court found no abuse of discretion, when the defendant's motion merely complained that his attorney had "numerous other cases" and the district court

6

found as fact that the attorney and defendant had been communicating, despite the

defendant's contrary assertion. *Id.* at 765. *Smith* has no application here.[2]

The Government further defends its claim by noting that the district court

"██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████.

---

[2] The unpublished *Stephenson* found no abuse of discretion for the denial of his motion to substitute counsel where "the rift was the result of Stephenson's 'obstinance, recalcitrance, or unreasonable contumacy,'" *id.* at 168. The memorandum presents no facts for comparison, and thus fails to provide guidance here.

The Government also █████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

For these reasons, the Government's reliance on *United States v. Walker*, 915 F.2d 480, 483 (9th Cir. 1990), overruled on other grounds, *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000), GAB 58, is curious; *Walker* supports Reczko. In *Walker*, the defendant and his counsel informed the court that they were not communicating; the attorney noted that the defendant would not speak to her, and she was therefore unable to prepare a defense. *Id.* at 483. The district court hypothecated that if new counsel were appointed, the defendant would do the same thing. *Id.* at 484. This Court reversed. It found that the breakdown in communication "forced [the defendant] into a trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not . . . communicate. Thus, the attorney was understandably deprived of the power to present any adequate defense in [Walker's] behalf." *Id.* (citing *Brown v. Craven,* 424 F.2d 1166, 1169 (9th Cir. 1970)). Because "an irreconcilable conflict arose between Walker and his attorney

8

which resulted in a total lack of communication preventing an adequate defense[,]" the district court abused its discretion when it denied his motion for substitute counsel. *Id.* at 485. *Walker* thus supports Reczko.

The Government also argues that the three *Velasquez*[3] factors support the denial of Reczko's multiple substitution motions. GAB 67-71. It first responds that the district court's inquiries into the conflict here were sufficient. GAB 67-68. But as the Government acknowledges, "[w]hen a trial court is informed of a conflict between trial counsel and a defendant, 'the trial court should question the attorney or defendant "privately and in depth," and examine available witnesses.'" GAB 67 (citing *Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005)); *see also Velazquez*, 855 F.3d at 1034 (same). ████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Daniels*, 428 F.3d at 1200; *see also* AOB 51. The Government offers no response to this point. ████████

████████████████████████████████████████████████████

████████████████████ GAB 68 (citing *United States v. Reyes-Bosque*, 596 F.3d 1017, 1034 (9th Cir. 2010)). ████████████████████████████████

████████████████████████.

---

[3] *United States v. Velasquez*, 855 F.3d 1021 (9th Cir 2017).

9

The Government then argues that the second *Velasquez* factor—"█████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ — weighs in its favor.  GAB 68-70.  It

doesn't.  The procedural history of the case, *see* AOB 4-30, unequivocally

establishes that the second *Velasquez* factor supports Reczko.[4]

The Government also asserts that Reczko's requests for new counsel were

untimely under the third *Velasquez* factor.  GAB 70-71.  The record shows

otherwise.  Reczko first moved for substitute counsel in April 2009, *viz.*,

approximately one-and-a-half years after Bakman's appointment and

approximately six years before trial.  The Government nevertheless contends that

Reczko didn't "seriously" seek new counsel until July 2010.  GAB 70.  Even if

measured by this metric, Reczko's motion made in July 2010 cannot seriously be

considered untimely.  The district court granted his *Faretta* motion over *three*

---

[4] ████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████ ).

*years later*, on September 9, 2013. Between those two dates, Reczko moved for substitute counsel many more times. And his case went to trial almost five more years. The Government's contention that by July 2010 "[s]ignificant time and effort and resources had been expended on [Reczko's] behalf" aptly demonstrates the Government's misunderstanding of what the Sixth Amendment demands:[5] the fact that his attorneys had dedicated time working on his case by that point doesn't cure the constitutional error and didn't resolve the conflict that existed. Nor is that something the district court should have included in its analysis. *See United States v. Williams*, 594 F.2d 1258, 1260 (9th Cir. 1979). At bottom, Reczko was represented by attorneys who were so deeply conflicted that Reczko was denied his Sixth Amendment right to counsel. The Government's refusal to engage the issue does not make it go away.

Moreover, the Government's reliance on the district court's prognostication that Reczko would have had similar problems with new counsel, does not overcome Reczko's claim. GAB 66, 71. That clairvoyance was proven false by Reczko's later cooperation with standby and then counsel of record David

---

[5] The Government essentially ignores the claim of Sixth Amendment error, and instead dedicates its briefing to addressing whether the district court's denial of Reczko's requests constituted an abuse of discretion, emphasizing along the way Reczko's conduct, to the exclusion of everyone else. *See* GAB 53-71. Its failure to address *Velasquez*, *Williams*, or *Brown* essentially concedes that it has no answer.

Kaloyanides, and then again with undersigned counsel on appeal. The court's inaccurate conjecture did not provide a basis to require Reczko to be represented by conflicted counsel.

> **2.      This Court's precedent establishes that the district court abused its discretion when it denied Reczko's (and his attorneys') numerous motions for substitute counsel, constructively denying him his right to counsel under the Sixth Amendment.**

The record below establishes—as supported by a long line of this Court's cases—that Reczko was denied his Sixth Amendment right to counsel in the district court. This includes *Velasquez*, *Brown*, and *Williams*, which Reczko relied on in his opening brief. *See* AOB 45-57. The Government offers no response to *any* of these cases.

Other cases also support Reczko, including *United States v. Adelzo-Gonzalez*, 268 F.3d 772 (9th Cir. 2001) and *Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005); *cf.* GAB 57 (citing *Adelzo-Gonzalez* and *Daniels*).

*Adelzo-Gonzalez* is similar to this case. There, this Court found that the district court abused its discretion when it denied the defendant's motion for substitute counsel, because there existed an irreconcilable conflict between the defendant and his attorney. 268 F.3d at 773-74. The defendant "was dissatisfied with his appointed counsel from early in the representation and made three motions for appointment of a new attorney. All of the motions were denied." *Id.* at 774. When he made his first motion, the defendant "declared that he and his appointed

counsel were unable to understand each other. He further explained that animosity had arisen in their relationship." *Id.* The district court denied the motion, finding there was no breakdown of communication. *Id.* at 775. The defendant subsequently made a second motion to substitute; the district court didn't rule on it. *Id.* The defendant then made a third motion, and again in open court expressed his contempt for and inability to work with his court-appointed counsel. *Id.* at 775. That too the district court denied. This Court recognized the "striking signs of a serious conflict[,]" which included open "display[s] of antagonism[,]" *id.* at 778, and found the district court's inquiries into that conflict "perfunctory." *Id.*

As for the extent of the conflict, the Court held: "it is evident that there was a serious breach of trust and a significant breakdown in communication that substantially interfered with the attorney-client relationship[,]" *id.* at 779, and emphasized "the appointed counsel's open attack on his client's credibility and opposition to the motions to substitute counsel had a similar consequence. Faced with the possibility of losing his final motion to substitute counsel, Adelzo–Gonzalez stated that he would rather proceed unrepresented than with the appointed counsel as his attorney." *Id.* at 779. The Court further found that "[t]he district court's finding that there was no break in communication between Adelzo–Gonzalez and his attorney was clearly erroneous. The relationship between Adelzo–Gonzalez and the appointed counsel was antagonistic, lacking in trust, and

13

quarrelsome." *Id.* at 780. *Adelzo-Gonzalez* is on all fours with this case and also compels vacatur and remand.

*Daniels* also supports Reczko. There, on habeas review, this Court held that "[w]here a criminal defendant has, with legitimate reason, completely lost trust in his attorney, and the trial court refuses to remove the attorney, the defendant is constructively denied counsel." 428 F.3d at 1198 (citing *Adelzo-Gonzalez*, 268 F.3d at 779). "This is true even where the breakdown is a result of the defendant's refusal to speak to counsel," *Daniels*, 428 F.3d at 1198, and must also be true where, as here, the attorneys refuse to meet with the defendant. As a result, the defendant in *Daniels* was constructively denied counsel where, based on his paranoia, he distrusted his attorney, who had spent most of his career as a prosecutor, and thus did not communicate with him. *Id.* at 1198-1201.

At bottom, the Government can't rewrite the history of this case. ███████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████ This Court should thus find, based on the record below, and on *Velasquez, Williams, Brown,* and *Adelzo-Gonzalez*, that the district court's denials of Reczko's motions for substitute counsel constituted an abuse of discretion and constructively denied Reczko counsel under the Sixth Amendment.

**B.**     **The district court should have reappointed counsel after Reczko requested reappointment during his *pro se* tenure, and its failure to do so also violated Reczko's Sixth Amendment right to counsel.**

In his Opening Brief, Reczko argued that his Sixth Amendment right to counsel was also violated by the district court's failure to reappoint counsel after he requested reappointment following his *Faretta* waiver of counsel, and that the district court should have construed his numerous and unequivocal vexations about his *pro se* status as requests for counsel, or at a minimum, held a hearing on the issue. AOB 58-65. In response, the Government recites the district court's January 20, 2015 Order denying Reczko's request. GAB 71-88. But that's not an answer to Reczko's claim to this Court.

Reczko first notes, as he did in his opening brief, that his "choice" to go *pro se* was hardly a choice at all; he was represented by two attorneys whose relationship with him and each other, for several years, was defined by █████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████

---

6 ████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

15

With respect to Reczko's contention that the district court should have construed his numerous complaints about his *pro se* status as requests for reappointment of counsel, or at the very least, held a hearing and inquired, *see* AOB 61-62, the Government offers a footnote to assert that Reczko "well knew how to make demands of the court" and if he wanted counsel, "he knew how to ask for it." GAB 85 n.14. But shortly after going *pro se*, Reczko expressed clear concern about his inability to effectively represent himself. *See* AOB 23-26. For



example, he told the court that he never actually wanted to waive counsel, but instead did so because he was incarcerated for so long and wanted his case tried within a reasonable amount of time. CR 938 at 2-3.[7] Construing Reczko's complaints as requests for counsel would have been reasonable; indeed, that's what the Government did. *See* ER 123-30 (Government's motion urging the district court to hold an inquiry as to whether Reczko sought to withdraw his waiver of counsel).

Indeed, as the Government recognized below (but no longer), under the Sixth Amendment, district courts have a duty to protect the constitutional rights of defendants, and particularly their right to counsel. *McCormick v. Adams*, 621 F.3d 970, 978-79 (9th Cir. 2010) (even after a *Faretta* waiver, "it is the duty of trial courts to protect an accused's right to counsel, indulging all reasonable inferences against the waiver of counsel"). The district court should have inquired whether Reczko sought reappointment of counsel.



With respect to the five *Thompson*[8] factors, AOB 64-65, the Government cribs the district court's January 20, 2015 Order denying Reczko's request for reappointment of counsel. *See* GAB 74-89.[9] But that's not an answer.

As to the first *Thompson* factor, the Government argues that a continuance would have inconvenienced the Government and its witnesses, including witnesses from abroad based on MLAT requests. GAB 74-75. Reczko recognizes that a continuance would have potentially inconvenienced witnesses. AOB 64. But that inconvenience was outweighed by his Sixth Amendment right to have the effective assistance of counsel in this life case. AOB 64. On that point, the Government offers no response, and any argument on that point is likewise waived. *See United States v. Castillo-Marin,* 684 F.3d 914, 919 (9th Cir. 2012).

But the Government overstates its claim of inconvenience. Most of the Government's essential witnesses were *not* being brought to the States via MLAT requests. This included ▮▮▮▮▮▮, her family,[10] and IJM employees. CR 1187 at 12-13. At the January 12, 2015 hearing on Reczko's motion for reappointment

---

[8] *United States v. Thompson*, 587 F.3d 1165 (9th Cir. 2009).

[9] As a result of that tack, the Government offers no response to Reczko's argument that his many complaints while *pro se* nullified his prior waiver of counsel. AOB 63 (citing *McCormick*). Any argument on that issue is now waived. *See United States v. Orozco,* 858 F.3d 1204, 1210 (9th Cir. 2017).

[10] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

of counsel, the Government represented that it only had four MLAT witnesses, which included "one member of the Philippine National Police, two members of the Philippine Bureau of Immigration, and one social worker." CR 1187 at 11-12. But at the evidentiary hearing for the motion to suppress, the Government presented no testimony by witnesses who worked for the Philippine National Police, the Philippine Bureau of Immigration, or a social worker. *See generally* CR 1136. And at trial, only the "social worker," Anecita Suico, testified; her testimony was limited to explaining how the investigation into Reczko commenced in the Philippines. Put differently, Suico's testimony was not essential, nor even required. *See generally* CR 1175 at 205-18. At bottom, the Government's case was built on testimony by witnesses who were *not* traveling via MLAT, but primarily by witnesses who worked for IJM or the United States government.

More importantly, Reczko didn't ask for a continuance, and the district court could have granted Reczko's request for counsel and denied Kaloyanides's request for a continuance. Indeed, when it appointed standby counsel, the court ordered standby counsel to "be prepared to represent Defendant in the event that termination of Defendant's pro se rights [wa]s necessary[.]" CR 626; *see also* ER 39-40. As a result, it cannot be disputed that the court could have appointed Kaloyanides without granting a continuance because the court appointed Kaloyanides mid-trial without one.

19

As to the second *Thompson* factor, the Government further recites the district court's January 20, 2015 order and argues that most continuances were attributable to Reczko. GAB 76. As noted above, the continuances in this case were attributable to both sides. *See* Part A, *supra*.

As for the third *Thompson* factor, Reczko argued that his right to be represented by effective counsel under the Sixth Amendment in this life case constituted a legitimate reason for the continuance Kaloyanides (not Reczko) requested. AOB 65. Rather than respond, the Government essentially cuts and pastes the district court's order denying relief. GAB 76-86. But that's no response, and Reczko need not restate his position.

For the fourth factor, the Government continues to track the district court's order, arguing that Reczko's conduct was dilatory and his request for counsel was done in bad faith. GAB 87-88. The record is otherwise. *See* Part A, *supra.*

For the fifth factor, the Government concedes that the district court's denial of Reczko's request for reappointment of counsel would (and did) prejudice him. GAB 86. But it argues that any prejudice was "eagerly assumed" when he waived his right to counsel. *Id.* Putting aside that Reczko reasonably believed he had no choice other than to proceed *pro* se, the Government's claim doesn't change the fact that this *Thompson* factor weighs in Reczko's favor. And the Government's point that Reczko had "many opportunities to raise concerns about being *pro se*" is

20

downright strange: that's exactly what Reczko did. *See* AOB 61-62. Finally, the Government suggests any prejudice would be cured by Reczko having standby counsel. GAB 86. But this contention ignores the fact that the district court specifically ordered standby counsel *not* to participate in the defense. *See* AOB 26 n.17.

In sum, the district court erred when it refused to reappoint counsel following Reczko's request, resulting in a denial of Reczko's Sixth Amendment right to counsel. This Court should vacate Reczko's convictions and remand for new trial.

**C.    The district court's colloquy with Reczko regarding the waiver of his jury trial right was insufficient under the circumstances to establish that the waiver was knowing and voluntary.**

In his opening brief, Reczko argued that the oral waiver of his jury trial right was invalid because the district court's colloquy was insufficient. AOB 65-70. The Government claims the opposite. GAB 89-95. In so doing, it again ignores the record showing that Reczko exhibited and suffered from mental and emotional instability, and ignores *United States v. Christensen*, 18 F.3d 822 (9th Cir. 1994), and *United States v. Shorty*, 741 F.3d 961 (9th Cir. 2013).

As an initial matter, the Government's suggestion that because Reczko waived his jury trial right for tactical reasons, GAB 89, 92, the waiver must be

valid, cannot be sustained. The fact that Reczko waived his jury trial right for tactical reasons is of no consequence. *See Shorty*, 741 F.3d at 969.[11]

The Government then asserts that the district court's colloquy accepting Reczko's waiver was sufficient and "extensive[.]" GAB 91-92. It was neither, as shown by *Christensen* and *Shorty*. In *Christensen*, the defendant, who had been charged with armed bank robbery, sought a continuance five days before trial so that he could be evaluated for competency to stand trial. 18 F.3d at 823. The trial was continued, and the defendant "signed and filed a written waiver of jury trial." *Id.* The district court conducted a brief colloquy with the defendant, during which it informed him that he was waiving his right to have 12 jurors unanimously find him guilty, and accepted the waiver. *Id.*

On appeal, the defendant argued that his jury waiver was invalid, and that the district court should have conducted an in-depth colloquy pursuant to *United States v. Cochran*, 770 F.2d 850, 851 (9th Cir. 1985), because the court was aware of defendant's manic-depressive disorder. 18 F.3d at 825-26. This Court ruled for Christensen and held: "[i]n cases where the defendant's mental or emotional state is a substantial issue, 'imploring' district courts to conduct fuller colloquies [] is not enough. *We must require them to do so*." *Id.* at 825 (internal citations omitted)

---

[11] This rule makes sense: it is impossible to imagine a scenario in which a defendant waives jury for *non*-tactical reasons.

22

(emphasis added); *see also Shorty*, 741 F.3d at 964-67 (in cases without written waiver, the Court "proceed[s] without any presumption that [the waiver] was" knowing and intelligent, and reversing based on an insufficient colloquy, lack of written waiver, and failure to instruct on two of the four *Cochran* factors in a case with a low IQ defendant).[12]

The application of *Christensen* and *Shorty* here is straightforward: (1) there was no written jury waiver; (2) the court was aware of Reczko's mental and emotional instability;[13] and (3) the court instructed Reczko on *fewer Cochran*

---

[12] It follows that the Government's assertion that *Shorty* "does not hold, as [Reczko] suggests, that a district court must address each of the four *Cochran* factors[,]" GAB 93, is incorrect.

[13]



factors during its colloquy than the court in *Shorty*. The district court's colloquy was insufficient, and Reczko's jury waiver was not knowing and voluntary.[14]

Nor does Reczko's competency to stand trial affect the analysis. *Cf.* GAB 94. Even putting aside the competency evaluations that found Reczko *incompetent* to represent himself, competency is not the metric by which this Court measures mental or emotional instability. *See Christensen*, 18 F.3d at 826 (discussing the difference between a competency determination and the "knowing and voluntary" inquiry).

In sum, the district court's colloquy with Reczko regarding his jury waiver was insufficient, and the waiver was therefore neither knowing nor voluntary. This Court should vacate Reczko's conviction on Count Two and the district court's finding that his prior conviction qualified under the section 3559 (e) enhancement, and remand for new trial.

---

[14] The magistrate presiding over the arraignment on the superseding indictment accepted a renewed waiver of counsel but no renewed waiver of the jury right. Thus on the superseding indictment, Reczko's jury right was not properly waived. The Government claims a renewed waiver was unnecessary because the superseding indictment charged nothing new. Not so. The superseding indictment added the sentencing enhancement, and the district court even recognized Reczko's "right to have a jury decide the enhancement." GER 816. The Government nonetheless claims that Reczko reaffirmed the waiver at a later pretrial conference. But this oral "reaffirmation" replays the same defects: Reczko, whose mental instability remained apparent, was only advised of the one (the same) *Cochran* factor. GER 815-16. Moreover, the colloquy was limited to Count One's sentencing enhancement and did not reach Count Two.

**D.    The district court erred when it found that Reczko's prior state conviction qualified as a "prior sex conviction" involving a minor under 18 U.S.C. § 3559(e).**

This Court reviews *de novo* whether Reczko's prior state conviction qualified as a "prior sex conviction" involving a minor under 18 U.S.C. § 3559(e). *See United States v. Brown*, 879 F.3d 1043, 1047 (9th Cir. 2018).  The Government nonetheless urges plain error review, even though Reczko presents this pure question of law.  GAB 96 (citing *United States v. Zhou*, 838 F.3d 1007, 1014-16 (9th Cir. 2016) (Graber, concurring).  While Judge Graber urges doing away with the "pure question of law" exception to plain error review, *see id.*, she also authored the majority opinion in *Zhou* that recognized the binding precedent presenting this exception.  *Zhou*, 838 F.3d at 1012.  *De novo* review applies here. Indeed, just last month, this Court reemphasized the applicability of this standard of review.  *United States v. Lillard*, ___F.3d___, 2019 WL 4047521 at *4 (9th Cir. Aug. 28, 2019); *see also United States v. Hanson*, ___F.3d___, 2019 WL 4051595 at *6 n.6 (9th Cir. Aug. 28, 2019) (recognizing same and declining to apply because defendant entitled to relief even under plain error standard).

Section 3559 (e) applies when the defendant's record includes a "prior sex conviction" for one of nine federal predicate statutes, or from a State, *if* that State conviction is a categorical match for one of the nine federal predicates (save for the applicable federal jurisdictional element).  18 U.S.C. § 3559(e).  In his Opening

Brief, Reczko argued that under the categorical approach, New York Penal Law section 130.35(1) encompasses a wider range of conduct than 18 U.S.C. § 2241(a)—the statute the Government proffered and the court applied below—and therefore, the district court erred in finding section 2241(a) to be a categorical match, and erred in basing a life sentence on that finding.

The Government essentially concedes that the New York statute is overbroad as applied to section 2241—the basis for the district court's imposition of a life sentence—and urges the Court not to address section 2241, but instead to sustain the judgment based on a different statute: 18 U.S.C. § 2242. GAB 100. In so doing, the Government never defends the district court's findings about section 2241 as the predicate statute adopted by the district court at the Government's urging, and thus waives that argument. *See United States v. Gamboa–Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007). In sum, the Government essentially concedes that the district court erred in finding that the New York statute is a categorical match to section 2241(a), and section 3559 (e)'s mandatory life sentence was erroneously applied as a matter of law. The Court should vacate the life sentence for that reason alone.

The Government also argues that Reczko's claim fails because it is only a "theoretical" and not "realistic" possibility that the State would "apply its statute to conduct that falls outside the generic definition of a crime." GAB 101 (quoting

26

*Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). The Government's contention is both imprecise and misplaced. There is no generic definition of a crime here; section 2241 is a specific statutory offense. Nor is the difference between "physical injury" under section 130.35(1) and "serious bodily injury" under section 2241(a) merely semantic or theoretical. *See, e.g., People v. Voymas*, 39 A.D.3d 1182, 1183 (N.Y. 2007) (demonstrating a fear of "physical injury" that does not rise to the level of "serious bodily injury" in practice). New York law similarly distinguishes between "physical injury" and "serious physical injury" because the difference between a lesser and greater injury is real, *compare* N.Y. Pen. L. § 10.00(9), *with* N.Y. Pen. L § 10.00(10).

Nor should the Court entertain the Government's new claim that section 130.35(1) is a categorical match to section 2242(1). The district court based its judgment of a life sentence on a finding that section 130.35(1) matched section 2241(a), as urged by the Government. Now that Reczko has proven the district court's error, this Court should vacate Reczko's sentence on Count One and remand for resentencing.

But even if the Court addressed section 2242(1), it could not find a categorical match for the same reason: the New York statute and section 2242(1) are not categorical matches. Section 2242(1) defines the proscribed conduct as threatening or putting another in fear, "other than" fear of "death," "serious bodily

injury," or "kidnapping." 18 U.S.C. § 2242(1). The New York statute requires the opposite, *viz.*, it includes fear of death. *See also* CR 1131 (*Shepard*[15] documents). For these reasons, the New York statute and section 2242(1) contain conflicting elements, and thus cannot establish a categorical match.

This Court should thus vacate Reczko's life sentence under section 3559 (e) and remand to the district court for resentencing without the section 3559(e) enhancement.

**E.** **The district court committed plain error under *Burrage v. United States.***

In his opening brief, Reczko argued that, pursuant to *Burrage v. United States*, 571 U.S. 204 (2014), the jury instructions misstated the law as to an essential element of the section 2251 charge. AOB 75-82.

In response, the Government first argues that section 2251's Ninth Circuit model jury instruction did not require further definition of the "for the purpose of" language in the statute. GAB 103-04. But model jury instructions are not binding law. *See United States v. Warren*, 984 F.2d 325, 327 n.3 (9th Cir. 1993) ("Use of a model jury instruction does not preclude a finding of error").

The Government then argues that *Burrage* has no application here because the "purpose" element relates to intent, whereas *Burrage* addressed "causation." GAB 104-09. The Government's argument is misplaced. *Burrage* isn't a

---

[15] *Shepard v. United States*, 544 U.S. 13 (2005).

28

"causation" case; it's a statutory interpretation case, and it instructs the lower courts how to interpret statutory language. Just because the statutory element the Supreme Court was interpreting in *Burrage* was one relating to causation, instead of intent, doesn't render it inapplicable. So too, Reczko buttressed his argument with *United States v. Miller*, 767 F.3d 585 (6th Cir. 2014), where the Sixth Circuit applied *Burrage* to find that the motive element of 18 U.S.C. § 249(a)(2)(A), *viz.*, *Miller* is an intent case. *Cf.* GAB 108 (incorrectly asserting that *Miller* was a causation case).

The Government further argues there was no plain error because "the district court's instruction was not clearly or obviously wrong because no court has yet" applied *Burrage* to section 2251. GAB 109. That argument demonstrates a fundamental misunderstanding of the plain-error doctrine. *Burrage* and *Miller* were both decided before Reczko's jury trial, and *they* establish obvious error. Indeed, contrary to the Government's assertion, *Miller* "appl[ied] Burrage . . . to a comparable intent element in another statute." *Compare* GAB 109, *with Miller*, 767 F.3d at 592-94. As a result, *United States v. Gnirke*, 775 F.3d 1155, 1164 (9th Cir. 2015) does not help the Government because application of *Burrage* and *Miller* does not "lead[] to conflicting results[.]" *Cf.* GAB 109.

The Government next argues the error did not affect Reczko's substantial rights because the trial evidence reflected that Reczko's desire to produce

29

pornographic images was the but-for cause of his sexual relationship with his wife,

████████ GAB 109-11. The Government gets it backwards: Reczko married

████████, and as part of that consensual relationship, they had intercourse both

before and after the images at issue in this case were taken. Most simply, the

evidence reflects that the photographs were incidental to that sexual relationship,

and a properly instructed jury would have had ample basis to acquit based on those

facts. *See* AOB 80-81; *but see also United States v. Lindsay*, 931 F.3d 852 (9th

Cir. 2019) (rejecting application of *Burrage* to 18 U.S.C. § 2423(b) on plain error

review).

**F.    The district court abused its discretion when it denied Reczko's Rule 15 motions to preserve the exculpatory testimony of two overseas witnesses, solely because Reczko could not first confirm their willingness to cooperate.**

In his Opening Brief, Reczko argued that the court abused its discretion by

denying him the opportunity to obtain the exculpatory accounts of Judge Gil

Acosta and his clerk, Mary Lou Cabanas, solely on the basis that Reczko could not

confirm their availability and willingness to be deposed at the time. AOB 82-87.

The Government avoids that claim by trying to recast it as whether a court can and

should consider, among many factors, witness availability for deposition and

willingness to testify. GAB 114-15. Reczko agrees that a court can consider those

factors. AOB 83. What Reczko disputes is the district court denying a Rule 15

motion solely on the cooperativeness factor alone, *viz.*, the defendant's inability to

confirm that his proposed deponents, who possess critical and exculpate theory testimony, would cooperate at the time of the motion. AOB 84, ER 136-38.

The Government also cites three cases, none of which supports the district court's incorrect application of Rule 15. GAB 115. In the first, *United States v. Zuno Arce,* 44 F.3d 1420 (9th Cir. 1995), this Court found no abuse of discretion where foreign deponents were unwilling to cooperate, *and* their proposed testimonies were "peripheral," "heavily and independently impeached," and "did not really matter much." *Id.* at 1425. That critical lack of materiality is not present here. Indeed, materiality is a stated requirement of Rule 15(c)(3); a willingness to cooperate is not. Because the district court denied Rule 15 motion solely on the basis of deponents' apparent unwillingness to cooperate, ER 098, 136-38, it abused its discretion by committing legal error.

Second, the Government cites *United States v. Nichols,* 534 F.2d 202 (9th Cir. 1976), which did not involve the deposition of witnesses outside the United States. *Nichols* involved untimely motions and a failure "even to identify the deponents," in addition to the proposed testimony having limited value. *Id.* at 204. It is difficult to see how *Nichols* applies at all, other than its passing reference to language in *United States v. Trenary,* 473 F.2d 680 (9th Cir. 1973).

As for the third, *Trenary,* the Government cites it for language but not its holding. *Trenary* did not involve application or interpretation of Rule 15 at all.

31

Rather, *Trenary* addressed the denial of a motion for a 6-month continuance. *Id.* at 682. To the extent the terse opinion suggested a Rule 15 issue, the lack of materiality of any identified witness distinguishes this case; Reczko was not asking for time, and the requested testimony was material.

The Government also attacks the proposed evidence as immaterial and unhelpful. But that assertion ignores the record. Even the district court understood that the proposed testimony was "relevant to Defendant's mistake of age defense." ER 098. And even in its confused analysis,[16] the Government appears to concede the importance of this evidence: "the court indicated that it had read defendant's papers and understood the significance of this possible testimony." GAB 116-17.

Therein lies the precise issue on appeal: understanding the significance of this possible testimony, the district court nevertheless denied Reczko's motion to preserve exculpatory evidence because Reczko could not first confirm their availability or willingness to cooperate. In so doing, the court applied an incorrect

---

[16] Contrary to the Government's characterization, Reczko does not "complain" that the district court considered only one factor. GAB 116. The court had considered multiple factors, and despite acknowledging their relevance and materiality, it denied depositions of these two critical witnesses solely upon the question of their willingness to cooperate. *See* AOB 84-87.

legal standard, which constitutes an abuse of discretion. *United States v. Hinkson,*
585 F.3d 1247, 1261-62 (9th Cir. 2009) (*en banc*).[17]

Last, the Government denigrates Reczko's mistake of age defense because it
claims ████████ trial testimony "clearly established" Reczko knew he could
not marry her because she was a minor. GAB 119. The Government overstates its
trial evidence. ████████ signed a legal document that purported she was of
legal age to marry. CR 1177 at 31-33. So too, the testimony the Government
elicited—that Reczko knew he could not marry her because she was a minor—lies
in tension with the testimony ████████ was giving of her own accord: that she
wanted to marry Reczko and was afraid that he would not marry her. GER 1190;
GER 1196. Given her fear that Reczko might not marry her, it's difficult to
believe that she would have taken steps to make sure he understood that he could
not marry her.

And importantly, the Government was only able to elicit testimony that
Reczko "knew" she was a minor through leading questions, to which ████████
would generally answer "yes." GER 1195-99. But when ████████ was asked
open-ended questions, her testimony supported Reczko's mistake-of-age defense:

---

[17] The Government also accuses Reczko of being disingenuous when he
challenges the district court's speculations regarding the witnesses' availability.
GAB 117 n.21 (citing AOB 86). Reczko stands by the assessment of facts
presented at AOB 86.

33

Q:      And what did you talk about with Uncle Roger?

A:      We ask if we can get married at the church.

Q:      And what did he say?

A:      It's not allowed because I'm a minor.

Q:      When he said that, did he speak in English or in another language?

A:      Another language.

GER 1195.  Even though the Government was eventually able to elicit the

testimony it wanted by prompting ███████ with suggestive questioning,

disputed questions of fact cannot be resolved on the sole basis of one party's

interested testimony.  That's why Reczko needed these independent witnesses: to

show that he believed ███████ was of age, and to show that his belief was

reasonable.

In sum, exceptional circumstances supported the taking of Judge Acosta's

and Cabanas's depositions: both possessed crucial exculpatory testimony and both

were unwilling to travel to the United States for trial.  The additional time and cost

of preserving their testimony were marginal, and the district court abused its

discretion when it denied Reczko's Rule 15 motions solely because Reczko could

not confirm their cooperation at the time of the motion.  This Court should reverse

Reczko's conviction on Count One and remand for a new trial.

34

**G.      Reczko's mandatory life sentence under 18 U.S.C. § 3559(e) violates the Eighth Amendment.**

In his Opening Brief, Reczko challenged a mandatory life sentence arising from his photographing himself having consensual sex with a 16-year old he believed was his wife, and who he reasonably believed was of age. Under the "as-applied" approach, Reczko compared the gravity of the offense to the severity of the sentence to argue that a mandatory life sentence in his case was grossly disproportionate and violated the Eighth Amendment's prohibition against cruel and unusual punishment. AOB 88-92. The Government applied a similar approach but came to the opposite conclusion: mandatory life sentence was not cruel and unusual punishment for Reckzo, whom it labels inaccurately a recidivist child rapist. GAB 121-23. But the Government's zealous defense of this life sentence cannot be squared with its offer to resolve the case for a 10-year sentence. *See* ER 436. Rather, this trial tax is unconstitutional, and this Court should correct it.

In opposition, the Government relies on *Norris v. Morgan,* 622 F.3d 1276 (9th Cir. 2010). GAB 122. But *Norris* helps Reczko. The relevant analysis begins with the gravity of the offense. "To determine the gravity of the offense, we must look beyond the label of the crime to examine the factual specifics of the offense[,]" and then examine the defendant's prior convictions. *Id.* at 1291-94 (citation omitted). Here, the Government's examination falters from the start.

35

Rather than examining the factual specifics of defendant's present and past convictions, the Government attempts to broaden the scope of analysis to include allegations. GAB 123.

Not only is that not the test, contrary to the Government's narrative, Reczko was not convicted of rape more than once, and cannot be considered a "recidivist child rapist" as the Government contends. *Id.*[18] As *Norris* establishes, "in applying the gross disproportionality principle courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed." 622 F.3d at 1287; *see also United States v. Paton,* 535 F.3d 829, 837 (8th Cir. 2008).

For this reason, the Government's objection to Reczko's and █████████ relationship and marriage is immaterial. The crime at bar was recording the events of the marital bedroom. Reczko married ████████, with her parent's consent, before a judge in a Philippine court of law. AOB 89. After they got married, he took private, sexual photographs and video with her, and traveled with the images to the United States. *Id.* Reczko shared these images with no one but ████████. AOB 90. The problem was that ████████ was 16 at the time; but Reczko did not know that (he reasonably thought she was of age), and he didn't know the

---

[18] The Government's inclusion of inflammatory details about Reczko's relationship with ████████, even though their relationship was not the crime, essentially urges this Court to view this case from an emotional prism. *Compare* GAB 123-24, *with* AOB 89 n.38. The Court should decline that invitation.

marriage was a sham.  Nonetheless, the Government prosecuted him for the production of child pornography.  AOB 89.

Given Reczko's belief that ████████ was his wife, Reczko lacked the level of culpability normally present in child pornography offenses, thus distinguishing this case from other sex cases such as *Norris*.  Reczko's crime is less culpable not because it was *de minimus*, as the Government claims, but because he thought they were married and he believed his actions lawful.  *Compare* GAB 124, *with* AOB 89.

The Government also relies on *Norris* to argue that (1) sex crimes against children devastate children, and (2) a life sentence reflects a legislative judgment against repeat sex offenders who are undeterred by the law and continue to commit such sex offenses.  GAB 125.  But Reczko's offense can be distinguished from the crime in *Norris,* which underscored "a clear pattern of recidivism."  622 F.3d at 1293.  In *Norris,* despite having been previously convicted of first-degree child molestation, defendant entered a McDonald's playroom and molested a child.  The Court found "this behavior exhibits a lack of impulse control and so supports the conclusion that Norris cannot be trusted to refrain from similar behavior in the future*." Id.* at 1293-94.  Reczko's offense, on the other hand, did not reflect a *clear* pattern of recidivism.  Rather, his behavior reflected a reasonable belief that he was abiding by the law when he married ████████ before a judge in the presence of

her family.  He did not take any sexual pictures of ████████ until *after* they were married, and he did so, believing they were married.  GAB 6, PSR ¶ 17.

This Court called the issue in *Norris* "close." 622 F.3d at 1291.  Reczko has a stronger claim than the defendant in *Norris*, because his culpability is not plain, and his offense did not reflect a *clear* pattern of recidivism that would justify a mandatory life sentence under section 3359(e).[19]  The consequence of a mandatory life sentence is severe, and so the application of a two-strikes sentencing scheme must be careful, dispassionate, and precise.  The Government's application is none of those.  The rationale that justifies the permanent incapacitation of repeat sex offenders does not compel the same conclusion here.  Reczko urges this Court to apply the reasoning in *Norris* and find that a life sentence enhancement would be grossly disproportionate in his case, and remand for resentencing without regard to section 3359(e)'s unconstitutional sentencing scheme.

---

[19] The Government reliance on *United States v. Paton,* 535 F.3d 829 (8th Cir. 2008), *see* GAB 125-26, founders for the same reason.  In *Paton,* culpability was plain, as was a clear pattern of recidivism.  *Id.* at 837-38.  Not so here.

In addition, the Government argues that Reczko would face a life sentence even if section 3559 (e) did not apply because he was subject to the recidivism enhancement in 18 U.S.C. § 2251(e).  GAB 126-27.  The Government misreads the statute.  The recidivism enhancement calls for sentences up to life imprisonment (but not mandatory life) only when the defendant has two prior predicate convictions, or when the conduct results in death, neither of which applies here.  18 U.S.C. § 2251(e).

## CONCLUSION

For the foregoing reasons, Reczko respectfully requests this Court vacate his convictions, enter a judgment of acquittal on count one and strike the section 3559 (e) enhancement, or at a minimum, remand for a new trial on both counts.  In the alternative, he asks this Court find his sentence under section 3559(e) unconstitutional, and remand for resentencing without regard to the unconstitutional mandatory life requirement under section 3559(e).

Respectfully submitted,

DATED: September 13, 2019  COLEMAN & BALOGH LLP

*/s/ E A Balogh*
ETHAN A. BALOGH
NARAI SUGINO
235 Montgomery Street, Suite 1070
San Francisco, California 94104
Telephone: 415.391.0440

Attorneys for Appellant
STANLEY DAN RECZKO III

39

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 15-50247

I am the attorney.

**This brief contains 9,444 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[xx] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Ethan A. Balogh*   **Date** _September 16, 2019
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**     *Rev. 12/01/18*